IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00739-SOM-2 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT JOHN |
| | ) | GOUVEIA'S MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN GOUVEIA, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JOHN GOUVEIA'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In January 2011, this court sentenced Defendant John
Gouveia to 292 months of imprisonment and ten years of supervised
release with respect to three drug crimes.  *See* Minutes of
Sentencing, ECF No. 225; Judgment in a Criminal Case, ECF No.
231.  Gouveia was responsible for 3.105 kilograms of actual
methamphetamine and 500 grams of generic methamphetamine.  *See*
Pretrial Investigation Report at 10 ECF No. 228, PageID # 2509;
ECF No. 225 (adopting Pretrial Investigation Report); Sentencing
Transcript at 15, ECF No. 273, PageID # 3428; Memorandum of Plea
Agreement, ECF No. 167, PageID # 500.  On April 13, 2015, the
court reduced his prison sentence to 240 months pursuant to
Amendment 782.  *See* ECF No. 563, PageID # 10256.

Gouveia represents that he has served approximately 10
years of his sentence.  *See* Memorandum in Support of Motion, ECF

No. 645-1, PageID # 11328.  Gouveia has a projected release date of August 22, 2027, and is currently incarcerated in FCI Lompoc, in Lompoc, California.  *See* https://www.bop.gov/inmateloc/ (input Register Number 87399-022) (last visited October 14, 2020).  FCI Lompoc houses 962 inmates.  *See* https://www.bop.gov/locations/institutions/lof/ (last visited October 14, 2020).

As of the morning of October 14, 2020, FCI Lompoc has no inmate COVID-19 cases and has 3 active staff COVID-19 cases. FCI Lompoc previously had a large COVID-19 problem.  This is seen in the number of those who have "recovered" from COVID-19 (736 inmates and 16 staff members).  Two inmates died from COVID-19. *See* https://www.bop.gov/coronavirus/index.jsp (last visited October 14, 2020).

Gouveia is 45 years old.  He says he "appears to be healthy," that he has a "largely unremarkable" medical history, and that he lacks "any significant medical condition[]."  ECF No. 645-1, PageID #s 11329, 11331.  In a supplemental filing earlier today, Gouveia represents that he is 5' 6" and 190 pounds.  *See* ECF No. 654-1, PageID # 11507.  However, a July 2020 medical record indicates that Gouveia is 5' 7" and 180 pounds.  *See* ECF No. 648, PageID #s 11389-90.  This would give him BMIs of 30.7 or 28.2, depending on what the correct height and weight might be. *See* https://www.cdc.gov/healthyweight/assessing/bmi/

2

adult_bmi/english_bmi_calculator/bmi_calculator.html.

On or about May 6, 2020, Gouveia tested positive for SARS-CoV-2, the virus that causes COVID-19 (specimen collected May 5, 2020).  ECF No. 648, PageID #s 11397, 11416, 11422; https://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html (indicating that SARS-CoV-2 is the virus that causes COVID-19) (last visited October 14, 2020).  Gouveia does not claim that his COVID-19 case was severe.  *See* ECF No. 645-1.  However he does say that, after getting COVID-19, he has had shortness of breath, a painful 5-mm calcified mass in his left pelvis, and numbness in his arms.  *Id.*, PageID # 11331; *see also* Sealed Medical Records, ECF No. 648, PageID # 11402.  Gouveia says that the BOP has ignored his requests for medical evaluations, *see* ECF No. 645-1, PageID # 11329, although his medical records indicate he has at least seen medical professionals for these conditions.

On July 24, 2020, Gouveia had two chest x-rays read by a radiologist.  The same day, Gouveia had four abdomen x-rays.  A radiologist noted that the 5-mm calcified mass in his left pelvis was probably a phlebolith, which is a "vein stone" or a calcification within venous structures.  *Id.*, PageID #s 11402, 11404; https://radiopaedia.org/articles/phleboliths?lang=us (last visited October 14, 2020).  The BOP ordered neck x-rays to check the numbness in Gouviea's arms.  *See* ECF No. 648, PageID #11409. On July 24, 2020, Gouveia had two neck x-rays to address a

difficulty in swallowing.  The radiologist read those as
"unremarkable," with the exception of a "prominence of
submandibular soft tissues."  *Id.*, PageID # 11406.

**II.      ANALYSIS.**

        Gouveia's compassionate release request is governed by

18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under

§ 3582(c)(1)(A), it must (1) find that the defendant exhausted

his administrative remedies or that 30 days have passed since he

filed an administrative compassionate relief request; (2) also

find, after considering the factors set forth in section 3553(a),

that extraordinary and compelling reasons warrant a sentence

reduction; and (3) find that such a reduction is consistent with

the Sentencing Commission's policy statements.  *United States v.*
*Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

**A.   Gouveia Has Satisfied the Exhaustion Requirement**
**of 18 U.S.C. § 3582(c)(1)(A).**

Gouveia submitted an administrative compassionate
release request to the warden of his prison on June 5, 2020.  *See*
ECF No. 645-5, PageID # 11355.  He represents that the warden
denied that request on July 6, 2020.  *See* ECF No. 645-5, PageID
# 11357.  In any event, there has been more than 30 days since
Gouveia submitted his request to the warden.  The Government
concedes that Gouveia has satisfied the exhaustion requirement.
*See* ECF No. 651, PageID # 11440.  Accordingly, this court finds
that Gouveia has fulfilled the exhaustion requirement of
§ 3582(c)(1)(A).

**B.   Gouveia Has Not Demonstrated That Extraordinary**
**and Compelling Circumstances Justify His Early**
**Release.**

This court turns to § 3582(c)(1)(A)'s second
requirement: whether extraordinary and compelling reasons warrant
a sentence reduction.  In orders addressing compassionate release
motions in other cases, this court has expressly recognized that
it possesses considerable discretion in determining whether a
particular defendant has established the existence of
extraordinary and compelling reasons that justify early release.
This court has also stated that, in reading § 3582(c)(1)(A) as
providing for considerable judicial discretion, the court is well

5

aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute. *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

According to the CDC, a person's risk of a severe illness (one that may require hospitalization, intensive care, or a ventalator) from COVID-19 increases with age.  The CDC website explains that "people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited October 14, 2020).

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

  *Cancer

  *Chronic kidney disease

  *COPD (chronic obstructive pulmonary disease)

  *heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

*Severe Obesity (BMI = 40 kg/m2)

*Sickle cell disease

*Smoking

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 14, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

*Pregnancy

7

>   *Pulmonary fibrosis (having damaged or scarred lung tissues)
>
>   *Thalassemia (a type of blood disorder)
>
>   *Type 1 diabetes mellitus

*Id.*

The CDC notes that, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Gouveia's status as a 45-year-old healthy individual who has recovered from a relatively mild case of COVID-19 indicates that he is not likely at an increased risk of a severe case of COVID-19 should he be reinfected. While the court recognizes that Gouveia experienced shortness of breath during his COVID-19 illness, he did not require hospitalization like the defendant in *United States v. Galu*, 2020 WL 5521034, (D. Haw. Sept. 14, 2020) (granting compassionate release motion to inmate with medical conditions that increased his risk of a severe case of COVID-19 when that inmate actually had a severe case of COVID-19).

Gouveia might be obese or overweight and that might increase the possibility that he could suffer a severe case of COVID-19 if he were reinfected. However, he does not establish that that is sufficient by itself to be an exceptional and compelling reason warranting a sentence reduction. *See United States v. Akolo*, 2020 WL 4810104, at *3 (D. Haw. Aug. 18, 2020) (noting in connection with the movant's compassionate release

motion that "his obesity, standing alone, is not an exceptional
and compelling reason that warrants a reduction in sentence").
But that does not end the analysis.

Gouveia is housed at FCI Lompoc.  There is no dispute
that, early in the COVID-19 pandemic, the virus spread rapidly
through FCI Lompoc, with 736 inmates of the current 962 inmates
(76.5%) and 16 members of the staff having contracted and
recovered from COVID-19.  Two inmates have died as a result of
being infected.  However, as of the morning of October 14, 2020,
there are no active inmate cases at FCI Lompoc and only 3
positive staff tests (with those individuals most likely not
going to work).  Whether that reduction is because many inmates
now have immunity, because the facility is doing better at
controlling the spread, or (of greater concern) because the
facility is failing to detect new cases, this court at this point
has a record that is far less serious than it would have been
earlier.  The court nevertheless considers the serious history at
FCI Lompoc and the risk that Gouveia might be exposed again to
COVID-19 and might suffer serious complications.

Because the parties offered conflicting accounts of the
prison's present conditions, this court deferred ruling on this
motion until it could review an expert report by Dr. Homer
Venters summarizing the current state of the Lompoc complex
COVID-19 outbreak in *Torres v. Milusnic*, No. CV. 20-4450 CBM

9

(C.D. Cal.).  Dr. Venters filed that report on September 25,
2020.  *See* ECF No. 653-1 (copy of report filed in this case).
Dr. Venters called the COVID-19 outbreak at the Lompoc complex
"one of the nation's most overwhelming."  *Id.*, PageID # 11461.

Venters paints a picture of inconsistency.  What he was
told by BOP staff sometimes differed greatly from what he was
told by inmates at FCI Lompoc.  For example, according to staff,
no inmates had ongoing symptoms from COVID-19.  *Id.*, PageID
# 11463.  However, a quarter of the inmates Venters spoke with at
FCI Lompoc said they were still experiencing such symptoms,
including shortness of breath, painful breathing, headaches,
ringing in the ears, and weakness.  *Id.*, PageID # 11467.

With respect to FCI Lompoc's medical facilities, staff
told Venters that the "sick call" response time was within one
day.  *Id.*, PageID # 11464.  The inmates disagreed with that
statement, telling Venters that "sick call requests often go
unanswered and when they are seen, it is most often more than a
week after reporting a medical problem," sometimes taking several
weeks.  *Id.*, PageID # 11467.

While Venters saw paper towels that were available to
inmates and most of the staff wearing masks, *id.*, PageID # 11466-
67, inmates told Venters that paper towels only became available
right before his visit and staff use of masks was inconsistent,
with less use during night and weekend shifts.  *Id.*, PageID

10

# 11468-69.

Venters noted that the Lompoc complex took some positive steps to address COVID-19, such as screening staff well and maintaining a good hospital unit and screening database. *Id.*, PageID # 11478.

Reading the Venters report as a whole, and considering the lack of any active inmate cases of COVID-19 in FCI Lompoc right now, the court does not see Gouveia as being in immediate danger of contracting COVID-19, although the possibility that he will be exposed to the virus in the future cannot be ignored. This court is not discounting what may have been an attempt by the BOP to show Venters better conditions at the prison than usually exist.  In addition, there may be serious flaws in FCI Lompoc's COVID-19 protocols.  Notwithstanding what may be room for improvement at FCI Lompoc, Gouveia's susceptibility to COVID-19 does not, without more, present an exceptional and compelling reason that warrants a reduction of his sentence.

There is some evidence in the record that suggests that Gouveia's risk of contracting COVID-19 might be further mitigated.  Most notably, Gouveia tested positive for COVID-19 in May 2020 and does not claim to have had a severe case of the disease.  That raises two issues.

First, if he did not develop complications during his May infection, it might be that he will not likely develop

11

complications even if reinfected.  *See* Richard L. Tillett, et al,
*Genomic Evidence for Reinfection with SARS-CoV-2: a Case Study*,
Oct. 12, 2020,
https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(2
0)30764-7/fulltext (noting that, in a reinfection of a Nevada
man, his symptoms were more severe, but also recognizing that in
other cases of possible reinfection, there was no difference in
the severity of symptoms).  There is no way for this court to
know whether Gouveia's test was a false positive, but, if the
test was accurate, it appears that Gouveia may have survived the
virus without developing serious complications, although he has
complained of shortness of breath, a 5-mm calcified mass in his
pelvis, and numbness in his arms.  The court cannot tell whether
all three conditions relate to COVID-19.

Second, as noted above, this court cannot conclude that
there is a substantial risk that Gouveia will be reinfected.  As
Gouveia notes, there is anecdotal evidence that a handful of
people have been reinfected with COVID-19.  *See id.* (discussing a
Nevada man who appears to have been reinfected with COVID-19);
Nate Wood, *Nevada lab confirms 1st coronavirus reinfection in the
US*, ABC News, Aug. 28, 2020,
https://abcnews.go.com/Health/nevada-lab-confirms-1st-coronavirus
-reinfection-us/story?id=72691353 (same); Maura Hohman, *COVID-19
reinfection: Can you get coronavirus twice? What does reinfection*

*mean?*, Today, Sept. 10, 2020,

https://www.today.com/health/covid-19-reinfection-can-you-get-cor
onavirus-twice-what-does-t190764 (reporting that 4 people have
been reinfected).  For example, there are reports that "[a] Hong
Kong man who was initially infected with the coronavirus in March
and made a full recovery was reinfected more than four months
later after a trip abroad."  Adam Taylor and Ariana Eunjung Cha,
*First Coronavirus Reinfection Documented in Hong Kong,*
*Researchers Say*, Washington Post, August 24, 2020,
https://www.washingtonpost.comhealth/2020/08/24/coronavirus-reinf
ection-hong-kong/.  The CDC recognizes that it has "limited
information about reinfections."
https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarant
ine.html (last visited October 14, 2020).  It says research is
ongoing and that "[t]here are no confirmed reports to date of a
person being reinfected with COVID-19 within 3 months of initial
infection," indicating a 3-month period of possible immunity.
*See id.*

        New research continues to be done on the immunity
issue.  The Nevada patient described above had positive tests on
April 18 and June 5, 2020.  This interval may indicate that any
immunity is even shorter than 3 months, although possibly that
patient had "a case of continuous infection entailing
deactivation and reactivation."  *See Genomic Evidence for*

*Reinfection with SARS-CoV-2: a Case Study*, Oct. 12, 2020.  In any event, even if reinfection is possible, it appears to be extremely rare, as reinfections have been reported only a few times in the more than 6 million cases to date.  *See* https://abcnews.go.com/Health/nevada-lab-confirms-1st-coronavirus-reinfection-us/story?id=72691353.

Moreover, individuals may have at least some immunity against future infection, although the strength and length of that immunity has not been established.  Gouveia asserts that people who have recovered from COVID-19 may only have immunity from it for a few months.  *See* ECF No. 645-1, PageID # 11332-22. This is consistent with some literature. *See* https://www.nytimes.com/2020/08/14/world/covid-19-coronavirus.html#link-10cd68e7 (last visited September 23, 2020); *see also* Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection. But Not for Long*, N.Y. Times, June 18, 2020, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (indicating that COVID-19 antibodies may only last 2 to 3 months) (last visited September 23, 2020)).

However, other articles have indicated that individuals infected with COVID-19 are likely to remain immune even after their antibody count drops.  These articles indicate that the body might retain immunological memory that allows it to quickly produce new antibodies to respond to a second infection.

14

Additionally, the remaining antibodies might even be sufficient to knock off COVID-19. "A decline in antibodies is normal after a few weeks, and people are protected from the coronavirus in other ways." Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020, https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html; *see also* Martin Finucane, *Here's What You Need To Know About Fading Coronavirus Antibodies*, Boston Globe, July 23, 2020, https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need-know-about-fading-coronavirus-antibodies/.

This court is acutely aware that, at this point, no one completely understands how COVID-19 operates. In fact, the CDC indicates that "more information is needed to know whether . . . immune protection will be observed for patients with COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (click on "Transmission" then "Can people who recover from COVID-19 be re-infected with SARS-CoV-1?") (last visited October 14, 2020). This court is in no position to make a definitive determination about Gouveia's risk of reinfection. What the court does know is that, as of today, there are no inmates in his facility with active cases of COVID-19. Additionally, because 76.5% of the inmate population at FCI Lompoc has already had COVID-19, those inmates possibly now have some form of immunity to reinfection

such that another large-scale COVID-19 outbreak at the facility may be less likely in the near future.  *See* Cynthia DeMarco, *COVID-19 Herd Immunity: 7 questions, answered*, July 17, 2020, https://www.mdanderson.org/cancerwise/what-is-covid-19-coronaviru s-herd-immunity-when-will-we-achieve-herd-immunity.h00-159383523. html ("We probably need around 70% of the population to have developed antibodies in order to halt community transmission of COVID-19.").  The combination of Gouveia's youth, lack of medical conditions placing him at identified risk of a severe case of COVID-19, lack of a severe case of COVID-19 when he did contract the disease, and the potential for having some form of immunity cannot be entirely ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

     The court now turns to an examination of factors set forth in section 3553(a).  Gouveia argues that this court should consider the impact of a change in the law on his sentence.  This court has previously held that a change in the law may be a relevant consideration in determining whether extraordinary and compelling circumstances justify a defendants' release, although this court has declined to rely on a statutory change as the sole consideration when Congress has not made the change retroactive. *See United States v. Lavatai*, 2020 WL 4275258, at *3 (D. Haw. July 24, 2020); *United States v. Cisneros*, 2020 WL 3065103, at

*3-4 (D. Haw. June 9, 2020).  Nevertheless, as this court noted in *Lavatai*, under § 3582(c)(1)(A), a court must still consider whether a reduced sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct.  18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a).  A change in the law under which a defendant would receive a reduced sentence if sentenced today could affect all of those considerations.

Gouveia argues that, if he were sentenced pursuant to the First Step Act, his guideline range would be 235 to 293 months imprisonment.  In other words, his 240-month sentence already falls at the low end of what he says his guideline range would be.  Gouveia has served about 10 years of his sentence, and, taking anticipated good time credit into account, still has almost 7 years until his anticipated release date.

Under these circumstances, this court concludes that Gouveia has failed to show extraordinary and compelling reasons warranting a reduction in his sentence.  Based on the present record, the court declines to release Gouveia under § 3582(c)(1)(A).  Gouviea may, of course, file another motion should his factual situation change.

**III.      CONCLUSION.**

Gouviea's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 14, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Gouviea*, Jr. Cr. No. 08-00739-SOM-2; ORDER DENYING DEFENDANT JOHN GOUVEIA'S MOTION FOR COMPASSIONATE RELEASE